## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LINDA MARALDO,

     Plaintiff,

                               Case No. 23-10577

v.                             Hon. Jonathan J.C. Grey

                              Mag. Judge Anthony P. Patti

UNITED STATES OF AMERICA,

     Defendant.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT CAUSATION OPINIONS AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## (ECF No. 33)

## I.    INTRODUCTION

This case requires the Court to determine whether it should exclude the expert causation opinions of Plaintiff Linda Maraldo's treating physicians under Federal Rule of Evidence 702. Because Maraldo's experts did not form their opinions based on sufficient facts or data and reliable principles and methods, the Court **GRANTS** the government's motion to exclude Maraldo's expert causation opinions. (ECF No. 33.) Despite the absence of expert causation opinions, the record contains a genuine dispute of material fact over whether the

underlying car accident caused Maraldo's injuries. Accordingly, the Court **DENIES** the government's motion for summary judgment. (ECF No. 33.)

## II.   BACKGROUND

### A. The Accident

On March 12, 2021, Plaintiff Linda Maraldo was sitting in her vehicle at a red light. (ECF No. 36-2, PageID.1233, 1236.) Cynthia O'Hara, the driver of a United States Postal Service ("USPS") box truck, was behind Maraldo at the light. (ECF No. 33-2; ECF No. 33-3, PageID.215–216.) After the light turned green, O'Hara removed her foot from the brake and the box truck idled forward and collided with Maraldo's vehicle. (ECF No. 33-3, PageID.215–216, 218; ECF No. 33-2.) After the collision, Maraldo exited her car to speak to O'Hara and immediately felt pain in her lower back. (ECF No. 36-2, PageID.1237, 1246.) O'Hara called for police and an ambulance. (ECF No. 33-2, PageID.221.) Emergency Medical Services ("EMS") transported Maraldo to Henry Ford Macomb. (ECF No. 36-3, PageID.1306.) Maraldo reported her lower back pain to EMS. (ECF No. 36-2, PageID.1250.) Doctors at

Henry Ford Macomb took a CT scan of Maraldo's spine which revealed degenerative changes. (ECF No. 36-6, PageID.1319.)

## B. Post-Accident Treatment & Expert Opinions

Maraldo received treatment from several physicians after her accident, including Dr. Anthony Femminineo, Dr. Ryan Pollina, and Dr. Kanwaldeep Sidhu. (ECF No. 36-17, PageID.1598, 1601–1602, 1608–1609.)

Dr. Femminineo treated Maraldo for low back pain and neck pain from April 2021 to June 2021. (ECF No. 36-6, PageID.1319, 1323, 1327.) In the course of treatment, Dr. Femminineo physically examined Maraldo three times. (ECF No. 36-19, PageID.1834, 1841–1843, 1849–1850.) The first exam revealed normal reflexes, strength, and sensation in the cervical spine (neck). (*Id.* at PageID.1834.) The exam also revealed spasms in the neck and upper trapezius muscles, sacroiliac tenderness, and some lumbar spasm.[1] [2] (*Id.*) Following the exam, Dr.

---

[1] Sacroiliac means "[r]elating to the sacrum and the ilium; denoting the articulation between the two bones, and the associated ligaments." Stedman's Medical Dictionary, 1114 (Howard R. Unger et al. eds., 3d ed. 1974). The sacrum "is a shield-shaped bony structure that is located at the base of the lumbar vertebrae and that is connected to the pelvis." *Sacrum*, A.D.A.M., https://perma.cc/E4PQ-UJR4 (Apr. 27, 2023). The ilium is a bone that forms the pelvis. Stedman's at 934.

3

Femminineo prescribed physical therapy for Maraldo's pain and ordered rheumatologic studies to check for an underlying rheumatologic condition. (*Id.* at PageID.1838.) The rheumatologic study results were normal which indicated to Dr. Femminineo that there was no inflammatory arthritis. (*Id.* at PageID.1840.)

Dr. Femminineo's second physical examination of Maraldo revealed similar findings as the first as well as some curvature in the middle and lower parts of Maraldo's back. (*Id.* at PageID.1843.) Following the exam, Dr. Femminineo prescribed pain medication and ordered an MRI of Maraldo's cervical and lumbar spine. (*Id.* at PageID.1844–1845; ECF No. 36-6, PageID.1325–1326.) Dr. Femminineo's overall impression of the lumbar spine MRI was the presence of arthritic changes in Maraldo's lumbar spine and severe stenosis—or narrowing—at joints L4/5. (ECF No. 36-19, PageID.1853–1854.) The lumbar spine report also indicated that there was fluid in the L4/5 joints, which Dr. Femminineo testified could be from a traumatic injury. (*Id.* at PageID.1856.) The doctor's overall impression of the cervical spine MRI was the presence of multilevel cervical

---

[2] Lumbar means "[r]elating to the loins, or the part of the back and sides between the ribs and the pelvis." Stedman's at 726.

degenerative changes, multilevel central canal and neural foraminal stenosis, and disc bulges at multiple levels of the upper thoracic spine.[3] [4] [5](*Id.*)

Dr. Femminineo's third physical examination of Maraldo revealed similar findings as the first two. (*Id.* at PageID.1849–1850.) Following this exam and a review of the MRI, Dr. Femminineo referred Maraldo to Dr. Pollina, a pain management specialist. (*Id.* at PageID.1851.)

Dr. Femminineo intends to offer an expert opinion that the March 2021 accident aggravated Maraldo's pre-existing condition, causing neck and back pain. (*Id.* at PageID.1861–1862.) Dr. Femminineo arrived at his opinion based on Maraldo statements that she got significantly worse after the accident. (*Id.*) Dr. Femminineo testified that there was no other basis for his opinion. (*Id.* at PageID.1861.) He further testified that Maraldo told him that she had some chronic intermittent neck and low back pain before the accident. (*Id.* at

---

[3] "Multilevel cervical degenerative changes" refers to deterioration at more than one disk or level in the neck. *See* Steadman's at 231, 327, 329.

[4] "Multilevel central canal stenosis" means narrowing at one or more levels of the spinal canal. *See Spinal Stenosis*, Cleveland Clinic, https://perma.cc/BRN2-892B (June 30, 2023). "Neural foraminal stenosis" is "narrowing that happens in certain places around the nerves that come out of" the spinal cord. *Foraminal Stenosis*, Cleveland Clinic, https://perma.cc/86JW-5DH8 (Mar. 28, 2023).

[5] "Upper thoracic spine" refers to the upper part of the middle section of the spine. *Thoracic Spine*, Cleveland Clinic, https://perma.cc/K2BU-RPB3 (Mar. 22, 2022).

PageID.1857–1858.) Dr. Femminineo never saw Maraldo's pre-accident medical records and did not know about the kind of treatment that Maraldo received for her neck or back pain prior to the accident or the last time Maraldo experienced pre-accident neck or back pain. (*Id.* at PageID.1858–1860.) Dr. Femminineo testified that to the extent that Maraldo has not been treated historically by anyone for any back problem, that is something he would take into consideration regarding the aggravation of her condition. (*Id.* at PageID.1882.)

Dr. Pollina treated Maraldo for back pain from July 2021 to March 2023. (*See* ECF No. 36-18, PageID.1726, 1777.) Prior to first treating Maraldo, Dr. Pollina reviewed Dr. Femminineo's treatment notes and Maraldo's MRI. (*Id.* at PageID.1726.) Dr. Pollina focused on the lumbar spine MRI and made the primary assessment that the severe central canal stenosis was a multilevel degenerative change. (*Id.* at PageID.1732–1733.) Dr. Pollina also observed fluid in facet joints L4/5, which indicated to him that Maraldo may be experiencing active inflammation from a traumatic injury.[6] (*Id.* at PageID.1733–1744.)

---

[6] "Facet joints" are "joints in the spine located in the back (posterior) aspect of the spine." *Facet arthritis*, Mayo Clinic, https://perma.cc/G8SC-7R6T.

Dr. Pollina physically examined Maraldo in July 2021. (*Id.* at PageID.1726, 1728.) Dr. Pollina's primary assessment was that Maraldo's pain came from spinal stenosis and radiated down the lower back to the buttocks area. (*Id.* at PageID.1729–1731.) Following the exam, Dr. Pollina recommended an epidural steroid injection at joints L4/5 to treat Maraldo's symptoms. (*See id.* at PageID.1740.) Dr. Pollina performed injections on August 9, 2021 and September 13, 2021. (*Id.* at PageID.1744, 1747.) When Maraldo returned to Dr. Pollina for a follow-up on September 30, 2021, she reported that her condition had improved by 75%. (*Id.* at PageID.1748–1749.) Dr. Pollina physically examined Maraldo, and the results were "[e]ssentially unchanged since the last examination." (*Id.* at PageID.1749–1750.)

Dr. Pollina next saw Maraldo in July 2022, and it appeared to him that Maraldo had an exacerbation of her back pain. (*Id.* at PageID.1758–1759.) Dr. Pollina physically examined Maraldo and made assessments of spinal stenosis and arthritic degenerative changes in Maraldo's back. (*Id.* at PageID.1761.) Dr. Pollina performed another epidural steroid injection—identical to the previous injections—to treat Maraldo's symptoms on August 15, 2022. (*Id.* at PageID.1763, 1765.)

Dr. Pollina next saw Maraldo in November 2022. (*Id.* at PageID.1765–1766.) Sometime between August and November 2022, Maraldo visited an orthopedic spine surgeon who recommended radiofrequency ablation—a procedure to destroy the nerves that supply sensation to the joints in the back to treat arthritic pain. (*Id.* at PageID.1766–1768.) At deposition, Dr. Pollina could not say whether the pain that Maraldo experienced in November 2022 was related to the March 2021 car accident. (*Id.* at PageID.1767.) Dr. Pollina performed two lumbar medial branch blocks—diagnostic procedures to determine whether Maraldo would be a good candidate for radiofrequency ablation. (*Id.* at PageID.1769–1770, 1773–1775.) On March 13, 2023, Dr. Pollina performed a radiofrequency ablation. (*Id.* at PageID.1775–1776.)

Dr. Pollina last saw Maraldo on March 30, 2023. (*Id.* at PageID.1782.) According to Dr. Pollina, Maraldo reported lower back pain relief following the ablation but also reported an "acute onset of back pain" with standing and walking. (*Id.* at PageID.1777–1778.) Dr. Pollina attributed this pain to Maraldo's spinal stenosis. (*Id.* at PageID.1779.) Dr. Pollina ordered an MRI of Maraldo's lumbar spine

8

which revealed that Maraldo continued to have severe spinal stenosis. (*Id.* at PageID.1781.) Dr. Pollina determined that his interventions would likely not correct the underlying stenosis, and he did not further treat Maraldo. (*Id.* at PageID.1782–1783.)

Dr. Pollina intends to offer an expert opinion that the car accident exacerbated Maraldo's underlying spinal stenosis. (*Id.* at PageID.1786–1787.) Dr. Pollina arrived at his opinion by "blending the patient's reported history, physical examination, and imaging," and his 15 years of experience. (*Id.* at PageID.1787.) Dr. Pollina testified that Maraldo's statements that she had not experienced back pain prior to the accident played a "significant" role in how he arrived at his causation opinion. (*Id.*)

Dr. Pollina further testified that learning about Maraldo's pre-accident back pain, treatment, and medical records could affect his causation opinion. (*Id.* at PageID.1787–1788, 1796.) Finally, Dr. Pollina testified that he (1) was not aware of Maraldo experiencing any back pain symptoms at any point before the March 2021 accident (*Id.* at PageID.1735), (2) did not know of Maraldo's medical condition before the accident (*Id.* at PageID.1784), (3) never reviewed Maraldo's pre-

9

accident medical records (*Id.*), and (4) did not know whether Maraldo underwent treatment for back pain before the accident. (*Id.* at PageID.1785).

Dr. Sidhu treated Maraldo for low back pain and leg pain from June 2023 to March 2024. (*See* ECF No. 36-20, PageID.1902–1903, 1934–1935.) Dr. Sidhu reviewed Maraldo's MRIs, x-rays, and CT scans and learned from Maraldo that she previously received pain management, physical therapy, and injections. (*Id.* at PageID.1901–1902, 1908, 1916, 1919–1920.) Based on Maraldo's MRIs and x-rays, Dr. Sidhu made the assessment that Maraldo had arthritis of the back, spondylolisthesis (a slipped disc from one vertebra), spinal stenosis at L3, L4, and L5, and a herniated lumbar disc at L3-L4. (*Id.* at PageID.1912–1915.) Dr. Sidhu recommended that Maraldo undergo a laminectomy and fusion—a surgical procedure to remove bone spurs and insert screws, rods, and cages to stabilize the area of surgery. (*Id.* at PageID.1920.) On August 14, 2023, Dr. Sidhu performed the procedure on Maraldo's spine. (ECF No. 36-8, PageID.1346–1347.)

Dr. Sidhu saw Maraldo on January 5, 2024, and she reported experiencing back pain after she lifted a heavy bag. (ECF No. 36-20,

PageID.1929–1930.) Dr. Sidhu prescribed a cortisone shot and steroids to reduce the inflammation, and he recommended physical therapy. (*Id.* at PageID.1931.) Dr. Sidhu's nurse practitioner saw Maraldo on March 8, 2023 and March 28, 2023. (*Id.* at PageID.1932.) Maraldo reported back pain at the first of the March visits, but Dr. Sidhu's nurse practitioner did not prescribe any medication or order any treatment. (*Id.* at PageID.1933.) Maraldo reported neck pain, unrelated to the car accident, at the second March visit. (*Id.* at PageID.1933–1934.)

Maraldo has identified Dr. Sidhu as an expert, and Dr. Sidhu opined that the March 2021 accident aggravated or exacerbated Maraldo's preexisting stenosis and spondylolisthesis to the point where Maraldo did not get better with therapy, medications, or injections and required surgery. (*Id.* at PageID.1940.) Dr. Sidhu testified that his opinion was based on Maraldo's statements about her symptoms after the accident. (*Id.* at PageID.1940–1941.) Dr. Sidhu further testified that his causation opinion would change if Maraldo was experiencing the same pain before and after the accident. (*Id.* at PageID.1941.) He also testified that he considered and ruled out the possibility that Maraldo's pain could be related to chronic degenerative conditions as opposed to

11

the accident because "of the history with the timeline that she became symptomatic after the accident." (*Id.* at PageID.1946.) Dr. Sidhu clarified that there is no other basis for his causation opinion besides Maraldo telling him about the accident and the pain she felt afterwards. (*Id.* at PageID.1948.) Finally, Dr. Sidhu testified that he did not know about Maraldo's pre-accident medical history or pre-accident neck and back pain treatment. (*Id.* at PageID.1935–1937.)

Each doctor testified that they knew a vehicle truck rear-ended Maraldo's vehicle. (ECF No. 36-19, PageID.1830–1831; ECF No. 36-18, 1785; ECF No. 36-20, PageID.1908, 1945.) The doctors further testified that they did not know anything else about the accident. (*See* ECF No. 36-19, PageID.1830–1831; ECF No. 36-18, PageID.1785–1786; ECF No. 36-20, PageID.1908, 1945.)

### C. Maraldo's History of Neck and Back Pain

Maraldo claims that the accident caused back, neck, and upper right leg injuries. (ECF No. 36-2, PageID.1261.) Maraldo has reported and received treatment for neck and/or back pain since late 2018. In November 2018, Maraldo fell at work and injured her lower back. (ECF No. 33-10, PageID.381.) Dr. Nagma Lott, Maraldo's primary care

physician at the time, recommended ibuprofen, local heat, and stretching to address the low back pain. (*Id.* at PageID.382–383.) In January 2019, Maraldo reported sleeping on her side due to chronic back pain. (*Id.* at PageID.377–378.) From August 2019 to October 2019, Dr. Michael A. Seivert evaluated and treated Maraldo for back and right hip pain. (ECF No. 33-11, PageID.384–392.) Dr. Seivert observed thoracic, lumbosacral, sacroiliac, pelvic, and hip somatic dysfunctions in Maraldo.[7] [8] (*Id.*)

In July 2020, Maraldo visited a chiropractor and reported issues with her lower back and sciatica. (ECF No. 33-12, PageID.393–394.) On the patient intake form, Maraldo indicated that she had experienced these issues for two months, that all activities, but mostly laying down, aggravated her condition, and that her condition was worsening. (*Id.* at PageID.394.) The chiropractor performed an x-ray on Maraldo and found disc thinning in the cervical spine, lipping/spurring in the cervical

---

[7] "Lumbosacral" means "[r]elating to the lumbar spine and the sacrum." Steadman's at 726.

[8] "Somatic" in this context means "[r]elating to the body; corporeal; physical." Steadman's at 1163.

and lumbar spine, and spondylolisthesis in the lumbar spine at L4-5.[9]

[10](*Id.* at PageID.398.) The chiropractor diagnosed Maraldo with severe

arthritic changes and a severe decrease in disc spaces in the cervical

spine, a decrease in disc spaces in the lumbar spine, and facet

syndromes in the lumbar spine.[11] (*Id.* at PageID.397.) The chiropractor

treated Maraldo six times between July 2020 and November 2020. (*Id.*)

In December 2020, Maraldo visited Dr. Richard T. Perry for

buttock and hip pain. (ECF No. 33-22, PageID.618.) Dr. Perry evaluated

Maraldo for hip and lumbar pain and found a slip in her lumbar spine

at L4-5. (*Id.* at PageID.619.)

### D. Procedural History

Maraldo filed her complaint under the Federal Tort Claims Act

("FTCA") on March 10, 2023. (ECF No. 1.) Following the close of

discovery, the government filed its motion to exclude Maraldo's experts

---

[9] "Disc thinning" refers to the thinning of spinal discs—the rubbery cushions between the bones in the spine. *See Degenerative Disk Disease*, Cleveland Clinic, https://perma.cc/R8ZK-36QZ (Feb. 4, 2025).

[10] "Lipping/spurring" refers to bone spurs, or osteophytes, which are "extra growths of bone tissue that appear like smooth lumps" on the outside of bones. *Bone Spur (Osteophyte)*, Cleveland Clinic, https://perma.cc/F5VU-L7PT (Oct. 14, 2024).

[11] "Facet syndrome," also known as facet joint syndrome, "is an arthritic condition of the joints of the vertebrae." *Facet Syndrome*, Weill Cornell Medicine, https://perma.cc/VH33-W6M3 (Sept. 2023).

and motion for summary judgment. (ECF No. 33.) The motions are fully briefed. (*See* ECF Nos. 33, 36, 37.)[12]

## III.   MOTION TO EXCLUDE

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert opinions. Under the rule, Maraldo must demonstrate to the Court that it is more likely than not that (a) the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The expert's knowledge must be "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). *See also Finley v. Mora*, Nos. 22-1886/1941, 2023 WL 7550447, at *2 (6th Cir. Nov. 14, 2023) (quoting *Daubert*, 509 U.S. at 590).

---

[12] The government moved to exclude the expert opinions of Drs. Femminineo, Pollina, Sidhu, Forton, Eckel, and Houseman. (ECF No. 33.) Maraldo only seeks to admit the expert opinions of Drs. Femminineo, Pollina, and Sidhu. (ECF No. 36.) Accordingly, the Court excludes the opinions of Drs. Forton, Eckel, and Houseman, and this order only addresses the opinions of Drs. Femminineo, Pollina, and Sidhu.

### B. Analysis

The government argues that none of Maraldo's expert opinions are based on sufficient facts or are the product of reliable principles and methods. (ECF No. 33, PageID.201–202.) The Court agrees.

A diagnosis is an opinion about what disorder caused a set of symptoms observed, whereas an etiology is an opinion about what caused the disorder diagnosed. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 669 (6th Cir. 2010). Rule 702 does not bar a treating physician from offering an etiology, but the etiology must meet the requirements of the rule and *Daubert*. *Id.* at 673; *Finley*, 2023 WL 7550447, at *3.

Here, each doctor intends to opine that the car accident aggravated Maraldo's underlying conditions, causing Maraldo's neck and back pain. (ECF No. 36-19, PageID.1860–1862; ECF No. 36-18, PageID.1786–1787; ECF No. 36-20, PageID.1938, 1940.) Each doctor formed their opinion solely or primarily based on Maraldo's statements that her pain worsened after the car accident. (ECF No. 36-19, PageID.1861–1862; ECF No. 36-18, PageID.1787; ECF No. 36-20, PageID.1940–1941.) Maraldo's self-reported chronology of the accident and her symptoms is an insufficient basis to support an etiological

16

conclusion. *Finley*, 2023 WL 7550447, at *3; *Brewer v. United States*, No. 21-cv-12686, 2024 WL 1580169, at *4 (E.D. Mich. Apr. 11, 2024) (citing *Finley*, 2023 WL 7550447, at *3). That is especially true here because of each doctor's testimony.

Dr. Femminineo testified that (1) he would, but did not have the records to, consider whether Maraldo historically received treatment for back pain, and (2) Maraldo told him that she had chronic intermittent neck and back pain. (ECF No. 36-19, PageID.1857–1858, 1882.) Dr. Pollina testified that learning about Maraldo's pre-accident back pain and treatment and reviewing pre-accident medical records could affect his causation opinion. (ECF No. 36-18, PageID.1787–1788, 1796.) Dr. Sidhu testified that (1) his causation opinion could change if Maraldo experienced the same pain before and after the accident or if Maraldo saw a chiropractor for low back pain before the accident, and (2) he did not know about Maraldo's pre-accident medical history or neck and back pain treatment history. (ECF No. 36-20, PageID.1935–1937, 1941, 1946–1947.)

None of the doctors knew that Maraldo treated for back pain at various times between November 2018 through November 2020. (*See*

ECF No. 33-10, PageID.381; ECF No. 33-12, PageID.393–397.) For example, none of the doctors knew that (1) Maraldo saw a chiropractor from July 2020 to November 2020 to treat worsening low back pain, and (2) that every activity, but mostly laying down, aggravated her low back pain. (ECF No. 33-12, PageID.393–397.) Further, Dr. Pollina did not know anything about Maraldo's back pain and treatment history before the accident. (ECF No. 36-18, PageID.1735, 1784–1785.) Dr. Pollina admitted that he believed that Maraldo was telling him the truth when she told him that she did not have pain before the accident. (*Id.* at PageID.1786.) Similarly, Dr. Sidhu testified that he assumed that Maraldo would have told him if she experienced pain before the accident. (ECF No. 36-20, PageID.1941.) Each doctor's unfamiliarity with Maraldo's medical history and their stated assumptions show that their opinions are not based on sufficient facts or data and that their opinions are not the product of reliable principles and methods.[13]

Maraldo argues that each doctor formed their opinion based on several factors. According to Maraldo, Dr. Femminineo formed his

---

[13] Maraldo's argument that she did not previously experience significant or debilitating back pain (ECF No. 36, PageID.1165, 1174) is not compelling because the doctors did not testify that *only* knowledge of prior significant back pain could change their opinions.

opinion based on his treatment of Maraldo, his orders to rule out alternative causes, and Maraldo's reported medical history (ECF No. 36, PageID.1169–1170); Dr. Pollina formed his opinion "[b]ased on the totality of the information [he] obtained on review of Maraldo's records, MRI, central canal edema, effusion at the facet joints, reported medical history, physical examinations and correlation of clinical symptoms throughout his continued treatment" (*Id.* at PageID.1171); and Dr. Sidhu formed his opinion "[b]ased on the radiology, physical examinations, history reported by Maraldo, failed prior conservative treatment modalities, and having ruled out chronic degenerative conditions as a cause."[14] (*Id.* at PageID.1173.)

These arguments do not save the doctors' opinions from exclusion. Each doctor's testimony belies the implication that they formed their opinions based largely on anything other than Maraldo's self-reported chronology of the accident and her symptoms. Dr. Femminineo testified that the "lynchpin" of his expert opinion was Maraldo reporting that her symptoms increased after the accident. (ECF No. 36-19, PageID.1880–

---

[14] "Edema is the medical term for swelling caused by fluid" trapped in the body's tissues. *Edema*, Cleveland Clinic, https://perma.cc/UQ4L-VNYT (May 17, 2022). Similarly, "effusion at the facet joints" refers to joint effusion, or a swollen joint, which "happens when extra fluids flood the tissues" around a joint. *Joint Effusion (Swollen Joint)*, Cleveland Clinic, https://perma.cc/N7WU-4KTJ (Oct. 12, 2021).

1881.) Dr. Sidhu testified that there was no other basis for his opinion besides what Maraldo communicated to him. (ECF No. 36-20, PageID.1948.) Dr. Pollina testified that Maraldo's statements played a "significant" role in helping him arrive at his causation opinion. (ECF No. 36-18, PageID.1787.)

Granted, Dr. Pollina also testified that he formed his opinion by blending the reported history, physical examination, imaging, and his 15 years of experience (ECF No. 36-18, PageID.1787.) However, in *Finley*, the appeals court held that the district court did not abuse its discretion in excluding an etiological conclusion based on the plaintiff's self-reporting of the chronology of the accident and his symptoms, the plaintiff's MRI records, and the physician's own experience in examining and treating the plaintiff. 2023 WL 7550447, at *3. Here too, Dr. Pollina's etiological opinion is based on Maraldo's reported history and his post-accident treatment of Maraldo. Therefore, Dr. Pollina's expert opinion lacks an adequate basis.

Maraldo also summarizes the way that each doctor treated her symptoms. (ECF No. 36, PageID.1168–1172.) However, the reliability of the doctors' diagnoses and treatments does not make their etiological

20

opinions reliable. *See Finley*, 2023 WL 7550447, at *3 ("As our caselaw makes clear, [expertise in etiology] does not follow from [expertise in diagnosis].")

Maraldo argues that each doctor reached their opinion by conducting a differential diagnosis. (ECF No. 36, PageID.1173.) That label alone does not render the opinions reliable. *See Tamraz*, 620 F.3d at 674 ("Calling something a 'differential diagnosis' or 'differential etiology' does not by itself answer the reliability question . . . .").[15] First, as stated above, a diagnosis is different than an etiology, and the government does not contest the doctors' diagnoses.

Second, to the extent that Maraldo argues that her doctors conducted a differential etiology to reach their opinions, the Court disagrees. The Court considers three factors in assessing whether a differential etiology is reliable: "(1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in

---

[15] Maraldo tries to distinguish *Tamraz* on the grounds that each of her experts agree that the accident aggravated her underlying condition. (ECF No. 36, PageID.1173.) The Court is not persuaded. In *Tamraz*, the appeals court held that the etiological opinion of Dr. Carlini—the expert witness at issue—was inadmissible under Rule 702 because Dr. Carlini's opinion contained "not just one speculation but a string of them." 620 F.3d at 672. Here too, each doctor's opinion contains inaccurate assumptions about the existence and severity of Maraldo's pre-accident back pain and treatment. Therefore, the Court's analysis does not change even though it is uncontested that Maraldo's experts agree that the accident aggravated her underlying conditions.

the possible causes of it? (3) Did the expert reliably rule out the rejected causes?" *Tamraz*, 620 F.3d at 674. "If the court answers 'no' to any of these questions, the court must exclude the ultimate conclusion reached." *Id.* (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009)). Here, the doctors ruled out the possibility that something other than the car accident aggravated Maraldo's underlying conditions by relying on Maraldo's self-reported chronology of the accident and her symptoms. That is not a reliable way to rule out alternative causes, especially considering that the doctors did not know about Maraldo's pre-accident neck and back pain and treatment. Therefore, the doctors' opinions are not reliable and admissible differential etiologies.

Finally, Maraldo attempts to distinguish *Finley* on two grounds: (1) unlike the expert in *Finley*, Maraldo's physicians received an "accurate history" from Maraldo and "she had not had any prior significant or debilitating back injuries or accidents," and (2) Maraldo's physicians "were aware that she was involved in a rear-end collision." (ECF No. 36, PageID.1174.) However, *Finley* is analogous and warrants excluding the doctors' expert opinions.

22

In *Finley*, Dr. Doig, Finley's causation expert, explained that the basis of his causation opinion was "a detailed history from Finley, a physical examination and testing, and his review of Finley's medical records." 2023 WL 7550447, at *2. However, Dr. Doig (1) "admitted that he thought Finley had been in a car when struck by [defendant's] tractor-trailer" in the 2020 accident, (2) "was unaware that Finley had been in an accident in 2016, after which he complained of neck and back pain, sought urgent-care treatment, and missed work for thirty days," and (3) "had no idea of the forces involved in the collision, was unaware of the lack of damage to the tractor-trailers, and did not know whether the impact was significant enough to produce Finley's injuries." *Id.*

Here, even though the doctors collectively knew that a USPS mail truck rear-ended Maraldo's car (ECF No. 36-19, PageID.1830–1831; ECF No. 36-18, 1785; ECF No. 36-20, PageID.1908, 1945), they did not know: (1) Maraldo's extensive pre-accident medical history and treatment for neck and back pain, (2) the forces involved in the collision between Maraldo and the mail truck, (3) the damage to Maraldo's car and the mail truck, and (4) whether the impact was significant enough to produce Maraldo's injuries. (*See* ECF No. 36-19, PageID.1830–1831,

1858–1860; ECF No. 36-18, PageID.1735, 1743–1744, 1785–1786; ECF No. 36-20, PageID.1908, 1935–1937, 1944.) The doctors did not need to know details of the accident because, as Dr. Sidhu recognizes, their purpose was to treat Maraldo. (ECF No. 36-20, PageID.1945.) However, the doctors' focus on treatment underscores "why courts mind carefully the difference between diagnosis in the clinical setting and etiological conclusions for the courtroom." *Finley*, 2023 WL 7550447, at *3.

Accordingly, the Court **GRANTS** the government's motion to exclude Maraldo's experts. (ECF No. 33.)

## IV.   MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could

24

return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–323. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

The Court generally determines liability under the FTCA by looking to state law. *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010) (citations omitted). Maraldo brings her claim pursuant to the

Michigan No-Fault Act. (ECF No. 1.) Under the act, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1)(A) (2024).

To show a "serious impairment of body function," a plaintiff must establish "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v. Carrier*, 795 N.W.2d 517, 526 (Mich. 2010). Under the first *McCormick* prong, a plaintiff must show that the accident caused the impairment. *Lopez-Garcia v. United States*, 207 F. Supp. 3d 753, 758–759 (E.D. Mich. 2016) (citing *Mehdi v. Gardner*, No. 319630, 2015 WL 1227710, at *2 (Mich. Ct. App. Mar. 17, 2015)). A plaintiff may recover under the act, regardless of a preexisting condition, if the accident causes trauma that triggers symptoms from the condition. *Johnson v. Liberty Mut. Gen. Ins. Co.*, No. 352983, 2022 WL 723909, at *6 (Mich. Ct. App. Mar. 10, 2022) (citation omitted).

## B. Analysis

The government argues that Maraldo cannot raise a genuine issue of material fact on causation without expert testimony. (ECF No. 33, PageID.205.) Despite Maraldo's history of back pain and her degenerative conditions, the Court disagrees. First, Drs. Femminineo and Pollina testified that an MRI of Maraldo's lumbar spine indicated that there was fluid in the L4/5 joints which could be from a traumatic injury. (ECF No. 36-19, PageID.1856; ECF No. 36-18, PageID.1733–1734.) The government challenges Maraldo's expert causation opinions, but they do not challenge the doctors' readings of the lumbar spine MRI or the lumbar spine MRI itself. The opinions about the MRI and the MRI itself raise a genuine issue of material fact on causation. *See Scheppelmann v. Progressive Marathon Ins. Co.*, No. 367981, 2024 WL 3912698, at *3 (Mich. Ct. App. Aug. 22, 2024) (considering MRI scans taken after a car accident in finding that the record contained evidence that a car accident caused an objectively manifested impairment in plaintiff).

Second, the record indicates that Maraldo received more intense treatment for her back pain after the accident compared to before the

27

accident. Before the accident, Maraldo's physicians recommended ibuprofen, local heat, and stretching for her back pain, and Maraldo treated with a chiropractor. (ECF No. 33-10, PageID.382–383; ECF No. 36-9, PageID.1364; ECF No. 33-12, PageID.397.) Within six months after the accident, Maraldo received two epidural steroid injections in her back at joints L4/5. (ECF No. 36-18, PageID.1744, 1747.) The government does not allege that Maraldo experienced an event that may have aggravated her low back pain between the accident and the epidural steroid injections.

Even if the evidence is not very strong, a reasonable jury could find, on this record, that the car accident aggravated Maraldo's degenerative conditions. Accordingly, the Court **DENIES** the government's motion for summary judgment. (ECF No. 33.)

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to exclude Maraldo's expert causation opinions and **DENIES** the government's motion for summary judgment. (ECF No. 33.)

**SO ORDERED.**

**<u>s/Jonathan J.C. Grey</u>**
Hon. Jonathan J.C. Grey
United States District Judge

Date: March 28, 2025

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2025.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager